# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Civil Case No. 11-592 (RJL)** |
| **U.S. DEPARTMENT OF JUSTICE,** | ) ) | |
| **Defendant.** | ) ) ) | |

## MEMORANDUM OPINION
(June ⅛__, 2012) [Dkt. ##9, 12]

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), brings this action against the U.S. Department of Justice ("defendant" or "DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, seeking records from the Federal Bureau of Investigation ("FBI"), a component of the DOJ.  Before the Court are defendant's Motion for Summary Judgment [Dkt. #9] and plaintiff's Cross-Motion for Partial Summary Judgment [Dkt. #12].  Upon consideration of the parties' pleadings, relevant law, and the entire record herein, the defendant's Motion for Summary Judgment is GRANTED and plaintiff's Cross-Motion for Partial Summary Judgment is DENIED.

## BACKGROUND[1]

Pursuant to FOIA, CREW requested from the FBI "any witness statements, investigation reports, prosecution memoranda, and Federal Bureau of Investigation ('FBI') 302 reports related to [the Department's] investigation of former House Majority Leader Tom DeLay, . . . includ[ing] . . . [the Department's] investigation of relationships between Mr. Delay" and various other individuals and organizations.[2] Compl. ¶ 6 [Dkt. #1] (alterations in original); Def.'s Statement of Mat. Facts ("Def.'s SOF") [Dkt. #10-2] ¶ 1. The FBI responded, neither confirming nor denying whether it possessed responsive

---

[1] In 2004, the FBI launched "a wide-ranging public corruption investigation as part of its ongoing efforts to root out systemic corruption within the highest levels of government." Declaration of David M. Hardy ("Hardy Decl.") [Dkt. #9-3], Ex. 3 to Def.'s Mot. for Summ. J., ¶ 22; Pl.'s Mem. in Partial Opp'n to Def.'s Mot. for Summ. J. & in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. ("Pl.'s Mot.") [Dkt. # 11] at 1-2. Two years later, "[i]n January 2006, former lobbyist Jack Abramoff pled guilty to charges of conspiracy, aiding and abetting honest services mail fraud and tax evasion." Hardy Decl. ¶ 22. In 2010, former Congressman Tom DeLay acknowledged that he was found "innocent" after being investigated by the DOJ. Ex. I to Pl.'s Mot. [Dkt. #11-3] at 1; *see also* Pl.'s Mot. at 2. Notably, the DOJ never brought charges against Mr. DeLay. Pl.'s Mot. at 2. However, "the FBI [did] acknowledge the existence of a lobbying investigation related to Abramoff and others, [but] at no time has it ever acknowledged Mr. DeLay's status vis-à-vis the investigation." Hardy Decl. ¶ 23; *see also* Def.'s Opp'n & Reply to Pl.'s Mot. ("Def.'s Opp'n") [Dkt. #14] at 6-7.

[2] The individuals and organizations include, "Christine DeLay, Dani DeLay, Jack Abramoff, Edwin Buckham, Tony Rudy, Michael Scanlon, Susan Hirshmann, the Alexander Strategy Group, the National Center for Public Policy Research, eLottery, Inc., the U.S. Family Network, Americans for a Republican Majority PAC ('ARMPAC'), Texans for a Republican Majority PAC ('TRMPAC'), and/or the Commonwealth of the Northern Marianas Islands." Compl. ¶ 6. CREW sent a similar FOIA request to the Criminal Division of the DOJ ("CRM"). *Id.* The CRM searched for responsive records, but withheld them pursuant to Exemption 7(A) of the FOIA. *Id.* ¶¶ 9-12. Defendant additionally withheld these records pursuant to Exemptions 3, 5, 6, and 7(C). Def.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J. [Dkt. #10-1] at 33-38. Plaintiff, however, is no longer seeking disclosure of these documents. Pl.'s Mot. at 5; Def.'s Opp'n at 2.

records, and informed CREW that it could not release records regarding a third party without "express authorization and consent of the third party, proof that the third party was deceased, or a clear demonstration that the public interest in disclosure outweighed the third party's personal privacy interest and that a significant public benefit would result from disclosure of the requested records." Def.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J. ("Def.'s Mot.") [Dkt. #10-1] at 4[3]; Ex. D to Def.'s Mot. [Dkt. #9-5] at 1; Def.'s SOF ¶ 2. CREW provided neither an authorization of third-party consent nor evidence of death. Ex. D to Def.'s Mot. at 1; Def.'s Mot. at 9; Declaration of David M. Hardy ("Hardy Decl.") [Dkt. #9-3], Ex. 3 to Def.'s Mot., ¶¶ 7, 10. Therefore, finding no "public justification for release," the FBI withheld any responsive records pursuant to the Privacy Act, 5 U.S.C. § 552a, and Exemptions 6 and 7(C) of FOIA, 5 U.S.C. §§ 552(b)(6), (b)(7)(C). Ex. D to Def.'s Mot. at 1. Defendant additionally withheld the records pursuant to Exemptions 2, 3, 7(A), 7(D) and 7(E), 5 U.S.C. §§ 552(b). *See* Def.'s Mot. at 26-30, 32-35, 42-45. Plaintiff appealed this decision on November 9, 2010, Compl. ¶ 17, and filed the present action on March 22, 2011, Hardy Decl. ¶ 10.

On August 25, 2011, defendant filed a Motion for Summary Judgment arguing that it properly withheld the records pursuant to various FOIA exemptions. Def.'s Mot. at 2. On September 22, 2011, plaintiff filed its Cross-Motion for Partial Summary Judgment seeking "an order requiring DOJ to disclose [the] responsive records." Pl.'s Mot. at 1. Currently the only "records that remain at issue in this case are the 'FD-302

---

[3] Defendant filed a corrected version of its Memorandum of Points and Authorities in Support of its Motion for Summary Judgment on August 30, 2011 [Dkt. #10-1]; all citations will reference the pagination in this corrected version.

and FD-302 inserts' and 'Investigative Materials/Reports' maintained by the FBI."[4]  Pl.'s

Mot. at 5-6.  For the reasons that follow, the Court finds that the defendant properly

withheld these records and thus GRANTS the defendant's Motion for Summary

Judgment.

_____

[4] In response to plaintiff's initial FOIA request, the FBI conducted a search for
responsive records. Hardy Decl. ¶ 24. The FBI uses its Central Records System ("CRS")
to conduct searches in response to FOIA requests. *Id.* ¶ 12. CRS enables the FBI to
maintain and search through the documents it has compiled for law enforcement
purposes, which are organized by subject matter. *Id.* Upon receipt of plaintiff's FOIA
request, the FBI reviewed documents in both the department's main files and the cross-
referenced serials in CRS indexed under various forms of the name Thomas Delay
(including "DeLay, Thomas, Dale," "Delay, Thomas, D," and "DeLay, Tom, Dale"). *Id.*
¶ 24. After conducting the search, the FBI located three categories of responsive
documents:  FD-302s and FD-302 inserts (interview forms/witness statements);
investigative materials/reports; and public source files. *Id.* ¶¶ 35, 40, 41. The FD-302s
and FD-302 inserts "are forms . . . used by FBI S[pecial] A[gent]s to record
information . . . obtain[ed] through witness interviews, . . . grand jury subpoenas, proffer
agreements and immunity statements." *Id.* ¶ 35. The forms contain "detailed
descriptions of names, addresses, telephone numbers of witnesses and other third parties,
information, leads, and other valuable investigative information supplied by various
sources and third-parties[,] . . . information regarding forensic analysis, . . . grand jury
proffer and immunity statements, and information exchanged between the FBI and
O[ther] G[overnment] A[gencie]s." *Id.* The investigative materials and reports include
"reports analyzing the evidence obtained," and "report[s] or summar[ies] . . . describ[ing]
(verbatim or in summary) the contents of the original evidentiary record, how it was
obtained, and how it relates to the investigation." *Id.* ¶ 40. The information in these
reports is often derived from the FD-302s and FD-302 inserts. *See id.* ¶ 35. The
information in these reports may be used to "apprise" other agencies "of the progress of
the investigation, or to elicit their assistance in handling investigative leads." *Id.*¶ 40.
Finally, the public source files contain any public records, "such as court records and
news clippings," maintained by the FBI. *Id.* ¶ 41. The FBI informed plaintiff that it
would disclose these documents upon plaintiff's written request. *Id.* ¶ 7. Plaintiff never
made this written request. *Id.* ¶ 10; Def.'s Mot. at 4. As to the other two categories of
documents, the FBI determined that the documents should be withheld in full under
various FOIA exemptions. Hardy Decl. ¶ 43.

## STANDARD OF REVIEW

"When assessing a motion for summary judgment under FOIA, the Court shall

determine the matter *de novo.*" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598

F. Supp. 2d 93, 95 (D.D.C. 2009) (citing 5 U.S.C. § 552(a)(4)(B)).  Summary judgment

shall be granted when the movant demonstrates "that there is no genuine dispute as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  In a FOIA action, the Court may award summary judgment based solely on

information provided in affidavits or declarations if they "describe the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor by evidence of agency bad

faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such

affidavits or declarations "are accorded a presumption of good faith, which cannot be

rebutted by purely speculative claims about the existence and discoverability of other

documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)

(citation and internal quotation marks omitted).  "Ultimately, an agency's justification for

invoking a FOIA exemption is sufficient if it appears logical or plausible." *Larson v.*

*Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation and internal quotation marks

omitted).

## ANALYSIS

Plaintiff, pursuant to FOIA, seeks documents related to the DOJ's investigation of

Tom DeLay ("Mr. DeLay") and alleges that defendant improperly withheld responsive

documents under various FOIA exemptions.  Plaintiff contends that the documents requested involve a matter of substantial public interest that outweighs any privacy interest in the contents of the records.  Specifically, plaintiff argues that Mr. DeLay's privacy interest is diminished because he was a public official and he publicly acknowledged that he was the subject of a DOJ investigation.  However, defendant contends that despite Mr. Delay's admissions, he did not waive his interest as to the details of the investigation.  Defendant argues that it conducted an adequate search in response to plaintiff's requests and properly withheld its responsive documents under FOIA exemptions 2, 3, 6, 7(A), 7(C), 7(D), and 7(E).  Unfortunately for the plaintiff, I agree with the defendant and, for the reasons that follow, GRANT defendant's Motion for Summary Judgment.

Under FOIA, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , [an agency] shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Congress has exempted nine categories of documents from the disclosure requirement, but, because there is a "strong presumption in favor of disclosure," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)), the exemptions "are to be 'narrowly construed,'" *id.* (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  Here, defendant asserts the protection of

seven FOIA exemptions: Exemptions 2, 3, 6, 7(A), 7(C), 7(D), and 7(E).  Under the law

of our Circuit, "[i]f an agency's statements supporting exemption contain reasonable

specificity of detail as to demonstrate that the withheld information logically falls within

the claimed exemption and evidence in the record does not suggest otherwise, . . . the

court should not conduct a more detailed inquiry." *Larson*, 565 F.3d at 865.

## I.   FOIA Exemptions 6 and 7(C)

Both Exemption 6 and Exemption 7(C) protect an individual's privacy interest

when balanced against the public interest in disclosure.  Exemption 6 protects "personnel

and medical files and similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C)

excludes "records of information compiled for law enforcement purposes . . . to the

extent that production of such law enforcement records or information . . . could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.*

§ 552(b)(7)(C).  Thus, in determining the applicability of Exemptions 6 and 7(C), the

Court must balance the interests advanced by FOIA's disclosure requirements against the

privacy interests of the individuals mentioned in the records.  *Beck v. Dep't of Justice*,

997 F.2d 1489, 1491 (D.C. Cir. 1993).  Because Exemption 7(C) "establishes a lower bar

[than Exemption 6] for withholding material," *ACLU v. U.S. Dep't of Justice*, 655

F.3d 1, 6 (D.C. Cir. 2011), the Court will focus its analysis on whether the records were

properly withheld under Exemption 7(C), *see Adionser v. Dep't of Justice*, 811 F. Supp.

2d 284, 298 n.15 (D.D.C. 2011) ("[T]he analysis under both [Exemption 6 or Exemption 7(C)] is . . . the same."). Plaintiff concedes "that the requested records were 'compiled for law enforcement purposes' within the meaning of Exemption 7."[5] Pl.'s Mot. at 8 n.3 (quoting Def.'s Mot. at 12); *see also* 5 U.S.C. § 552(b)(7). Therefore, this Court need only consider the balancing of the privacy and public interests at stake and whether "the balance characteristically tips in" favor of exemption to justify defendant's categorical withholding under Exemptions 6 and 7(C).[6] *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893-94 (D.C. Cir. 1995) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989)). Here, it does!

To constitute a privacy interest under FOIA, the claimed interest must be "substantial"—that is, "anything greater than a *de minimis* privacy interest." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008) (citing *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). Generally, "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984); *see also Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 864 (D.C. Cir. 1981) ("There can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of an FBI

---

[5] This also applies to Exemptions 7(A), 7(D) and 7(E).

[6] In the alternative, defendant seeks to withhold, under Exemptions 6 and 7(C), the "names and identifying information of FBI agents and personnel and other government employees; names and identifying information of third-party subjects of the lobbying investigation, and names and identifying information of third-parties who provided information to the FBI." Def.'s Mot. at 38-39.

investigation."), and "third parties who may be mentioned in investigatory files and witnesses and informants who provide information during the course of an investigation have an obvious and substantial privacy interest in their information," *Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007) (citation and internal quotation marks omitted). This privacy interest is particularly strong where, as here, an individual has "been investigated but never publicly charged."[7] *ACLU*, 655 F.3d at 7. Although Mr. DeLay's privacy interest[8] is "somewhat diminished" by virtue of his political stature, he did "not surrender all rights to personal privacy when [he] accept[ed] a public appointment."[9] *Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996) (quoting *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981)).

Plaintiff argues, however, that Mr. DeLay's privacy interest is further diminished because "Mr. DeLay and his attorney have publicly acknowledged that he was a subject of DOJ's investigation" and "the FBI concede[d] that [it] maintain[s] records concerning

---

[7] Mr. Delay was indicted in a separate proceeding in Texas state court on charges of money laundering and conspiracy to engage in money laundering. Hardy Decl. ¶ 20. This fact does not affect the Court's analysis. *See Cong. News Syndicate v. U.S. Dep't of Justice*, 438 F. Supp. 538, 544 (D.D.C. 1977).

[8] The Court notes that the privacy interests of several third parties are implicated in this matter; however, in their arguments, both parties focus largely on Mr. Delay's privacy interest.

[9] Moreover, as our Circuit Court has previously noted, the very nature of Mr. DeLay's public status may, in fact, increase his privacy interest. *Fund for Constitutional Gov't*, 656 F.2d at 865 ("The degree of intrusion is indeed potentially augmented by the fact that the individual is a well known figure and the investigation one which attracts . . . national attention . . . . The disclosure of that information would produce the unwarranted result of placing the named individuals in the position of having to defend their conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings.").

Mr. DeLay that were created as part of DOJ's public corruption investigation."[10]  Pl.'s

Mot. at 9.  But "merely by acknowledging the investigation and making a vague

reference to its conclusion, [Mr. DeLay did not] waive all his interest in keeping the

contents of the [FBI] file confidential." *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949

(D.C. Cir. 1998).  Mr. DeLay still maintains a substantial privacy interest in the substance

of the investigation.  Unlike in *Kimberlin*, where an Assistant U.S. Attorney publicly

acknowledged that he was the subject of an investigation, "what he was accused of, and

that he received a relatively mild sanction," *id.*, Mr. DeLay has made no such admission.

Mr. DeLay's public statement relied on by plaintiff discloses only that an investigation

was conducted by the DOJ and has since concluded without charges, Pl.'s Mot. at 2; Mr.

DeLay never disclosed the nature of the investigation.[11]  Even the court in *Kimberlin*

---

[10] As a matter of policy, in responding to FOIA requests for third-party information where no privacy waiver, proof of death, or significant public interest has been presented, the FBI will "provide[] a *Glomar* response, neither confirming nor denying the existence of records." Def.'s Mot. at 6 (citing Hardy Decl. ¶ 18).  However, "where[, as here,] an FBI investigation has been officially recognized, the FBI will acknowledge the existence of the investigation and potentially responsive files and, upon request, release to the requester public source information, but invoke Exemptions 6 and 7(C) for the remainder of responsive information." *Id.* at 6-7 (citing Hardy Decl. ¶ 19); *cf. Benavides v. DEA*, 968 F.2d 1243, 1246 (D.C. Cir. 1992) (interpreting FOIA exclusion under 5 U.S.C. § 552(c) that requires acknowledgment of existence of documents concerning "officially confirmed" informant and concluding that Congress intended that the agency may withhold those documents under Exemption 7(C) despite acknowledgement), *modified*, 976 F.2d 751 (D.C. Cir. 1992).

[11] Nor has the DOJ disclosed the extent of Mr. DeLay's involvement.  Hardy Decl. ¶ 23; Def.'s Opp'n at 6-7.

found that the AUSA maintained a privacy interest in the "details" of the investigation.[12]

139 F.3d at 949.  For these same reasons, the FBI's concession that it possesses

responsive records does not waive Mr. DeLay's privacy interests.  As discussed, Mr.

DeLay maintains a privacy interest in the content of those responsive records, not just in

the disclosure of their existence.  *Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 724 F.

Supp. 985, 990 (D.D.C. 1989) (finding continued privacy interest in further disclosures

even though prior disclosures "revealed that [the congressman] was the subject of a

criminal investigation and the general contours of the investigation," because "[f]urther

disclosures would likely renew interest in the matter, with a corresponding invasion of

privacy"), *aff'd*, 917 F.2d 571 (D.C. Cir. 1990).  The Court thus finds that there has been

no waiver and Mr. DeLay maintains a substantial privacy interest in the contents of the

---

[12] So too is the present case different from *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir. 1995), cited by the plaintiff.  There, the court found a limited privacy interest where Ross Perot publicly disclosed that he offered to assist "the Customs Service in its drug interdiction efforts," noting in particular, that disclosure of the requested records would reveal "offers of assistance" rather than "unwarranted association with criminal activity or reputational harm."  71 F.3d at 887, 894, 894 n.8.  Here, Mr. DeLay would be subject to the exact "unwarranted association with criminal activity or reputational harm" that was not at stake in *Nation Magazine*.

investigatory file.[13]

Where, as here, a court finds that a legitimate privacy interest exists, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)) (internal quotation marks omitted). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm. for Freedom of Press*, 489 U.S. at 773) (citation and internal quotation marks omitted). Thus, the Court must determine whether the disclosure "contribut[es] significantly to public understanding of the operations or activities of the government." *Reporters Comm. for Freedom of Press*, 489 U.S. at 775.

The burden is on the requester to demonstrate a "sufficient" public interest for disclosure. *Favish*, 541 U.S. at 172. Plaintiff contends that disclosure would serve the

---

[13] Though the parties do not spend much time discussing the issue, *see* Def.'s Mot. at 17 n.4; Pl.'s Mot. at 13; Def.'s Opp'n at 14-15, the Court additionally finds that those third parties named in plaintiff's FOIA request and in the responsive records, as well as the FBI Special Agents named in the records all have substantial privacy interests in the content of the records. *Martin*, 488 F.3d at 457; *see also Scales v. Exec. Office of U.S. Attorneys*, 594 F. Supp. 2d 87, 91 (D.D.C. 2009) ("The mere fact that [a third party] testified at trial, or that she acknowledged at trial that there were forgery charges pending against her at that time, does not constitute a waiver of her privacy rights to all other related information . . . requested by the plaintiff."); *Lardner v. U.S. Dep't of Justice*, No. 03-0180, 2005 WL 758267, *19 (D.D.C. Mar. 31, 2005) (third parties who testified at trial maintained privacy interests in "their presence in an FBI investigatory file").

public interest by "'shed[ding] light on [the] agency's performance of its statutory

duties,' and there is a substantial public interest in reviewing DOJ's enforcement of the

ethics and anti-corruption laws governing the activities of federal officials, such as Mr.

DeLay."[14]  Pl.'s Mot. at 14-15 (quoting *Reporters Comm. for Freedom of Press*, 489 U.S.

at 773).

Unfortunately for plaintiff, however, the documents it presently seeks are "not

very probative of [the DOJ's] behavior or performance." *SafeCard Servs., Inc.*, 926 F.2d

at 1205 (finding the privacy interest in "the names and addresses of potential witnesses"

to outweigh the "insubstantial" public interest in the information's disclosure under

---

[14] Plaintiff explicitly disavows any allegations of "agency misconduct" to support its request for disclosure. Pl.'s Mot. at 15-16. Plaintiff's argument, however, that DOJ admitted the presence of a public interest by granting expedited processing of plaintiff's request is misguided. *Id.* at 15. Plaintiff sought expedited processing of its FOIA request, Compl. ¶ 8, which was granted pursuant to 28 C.F.R. § 16.5(d)(1)(iv), on grounds that the information sought pertained to "a matter of 'widespread and exceptional media interest' . . . 'in which there exist possible questions about the government's integrity which affect public confidence.'" Hardy Decl. ¶ 6 (citation omitted). The standard for expedited processing is quite distinct from the Exemptions' public interest analysis. *Compare* 28 C.F.R. § 16.5(d)(1)(iv), *with Davis*, 968 F.2d at 1282 ("[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to.") (citation and internal quotation marks omitted).

As part of its FOIA request, plaintiff also sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.11(k), asserting that disclosure would "contribute to greater public awareness of alleged malfeasance and possible criminal behavior by the former majority leader of the House of Representatives, and of DOJ's recently concluded investigation into Mr. DeLay's activities," and "would shed light on DOJ's conduct in conducting the investigation of Mr. DeLay, and its apparent decision to close the investigation without bringing charges against Mr. DeLay." Ex. 1 to Declaration of Kristin L. Ellis ("Ellis Decl.") [Dkt. #9-7], Ex. 6 to Def.'s Mot., at 3-4; *see also* Def.'s Mot. at 18. It does not appear that the fee waiver request was granted. Ex. 4 to Ellis Decl. [Dkt. #9-7] at 1 ("As to your fee waiver request, we will consider that request once we determine what records we have within the scope of your request and whether any fees will be incurred in the processing of your request.").

Exemption 7(C)); *see also Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003) (rejecting the asserted public interest in redacted names and other identifying information—to "shed light on the workings of government by permitting closer public scrutiny of the . . . investigations"). The FD-302s and FD-302 inserts contain only identifying information and factual information principally supplied by third parties and sources. Hardy Decl. ¶ 35. While the Court acknowledges that there may be some public interest in the investigative materials and reports, which describe how evidence was obtained and are used to update other agencies on the investigation's progress, *id.* ¶ 40, this minimal public interest does not outweigh the substantial privacy interests of Mr. DeLay and other third parties in the contents of the documents. As such, I find that the "balance . . . tips in" favor of exemption, *Nation Magazine*, 71 F.3d at 893 (citation omitted), and defendant properly categorically withheld the records pursuant to Exemptions 6 and 7(C).[15]

## II.   FOIA Exemption 7(A)

Additionally, I find that defendant properly withheld the records in whole pursuant

---

[15] Although I find that defendant properly categorically withheld the responsive records, the Court additionally concludes, for the reasons previously discussed, that defendant could properly withhold the names and identifying information of the "FBI agents and personnel and other government employees; . . . third-party subjects of the lobbying investigations, and . . . third-parties who provided information to the FBI." Def.'s Mot. at 38-39. Each of these individuals has a strong privacy interest in protecting their names and any identifying information from disclosure. *See Martin*, 488 F.3d at 457 (third parties, witnesses and informants); *Fund for Constitutional Gov't*, 656 F.2d at 864 ("subject of an FBI investigation"); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (investigators, witnesses and informants). These privacy interests outweigh plaintiff's asserted public interest. *Schrecker*, 349 F.3d at 666.

to Exemption 7(A). Exemption 7(A) protects from disclosure "records or information compiled for law enforcement purposes" if disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To justify withholding information pursuant to Exemption 7(A), the agency must demonstrate that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or *reasonably anticipated*." *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis in original). Our Circuit has "held that the exemption is available where enforcement proceedings are 'pending or contemplated,'" *id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980)), to prevent "agencies [from] be[ing] hindered in their investigations," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). The defendant has fulfilled the second and third prongs as this case involves "enforcement proceedings that are pending or reasonably anticipated." Not only is the investigation still ongoing, Hardy Decl. ¶ 23 (referring to the "continuing large public corruption investigation"), but "[t]here are several outstanding convictions and sentencing proceedings . . . which have not yet been completed." Hardy Decl. ¶ 29; *see Kidder v. FBI,* 517 F. Supp. 2d 17, 27 (D.D.C. 2007) (defendant's pending appeal and ongoing investigation of other suspects qualified as pending law enforcement proceedings); *cf. Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) ("Exemption 7(A) does not require a presently pending 'enforcement proceeding.' Rather, . . . it is sufficient that the government's ongoing . . . investigation is likely to lead to such proceedings.") (citation omitted).

Defendant has demonstrated that disclosure "could reasonably be expected to interfere with" these enforcement proceedings. Defendant is withholding the FD-302s and FD-302 inserts and the investigative materials and reports, which, if disclosed, would interfere with the current enforcement proceedings by identifying "individuals, sources, and potential witnesses" and exposing them to "possible harm . . . or intimidation," Hardy Decl. ¶ 31; identifying third parties currently under investigation, *id.*; "uncover[ing] the government's trial strategy," *id.*; and notifying "individuals who remain under investigation, who could use the released information to their advantage," Def.'s Mot. at 29. *See Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 765 ("DOJ satisfies its burden of proof under Exemption 7(A) by grouping documents in categories and offering generic reasons for withholding the documents in each category.") (citation omitted).  The Supreme Court and our Circuit have upheld the withholding of documents pursuant to Exemption 7(A) where disclosure would result in witness intimidation or would reveal the scope and direction of an investigation, which could allow the target to construct fraudulent defenses or alibis to avoid prosecution or destroy or alter evidence. *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989) (collecting cases).  Thus, having demonstrated the expected harm and interference that disclosure could cause to the current and pending enforcement proceedings, defendant has properly invoked Exemption 7(A).

## III.   FOIA Exemptions 2, 3, 7(D), and 7(E)

In any event, I find that defendant can properly withhold the records pursuant to FOIA Exemptions 2, 3, 7(D), and 7(E).  In a FOIA action, an agency must

16

"demonstrate . . . that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation and internal quotation marks omitted).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search, which, in the absence of contrary evidence, are sufficient to demonstrate an agency's compliance with FOIA. *Perry v. Block*, 684 F.2d 121, 126-27 (D.C. Cir. 1982) (per curiam).  Defendant has demonstrated, through the declaration of David M. Hardy, the FBI's Section Chief of the Record/Information Dissemination Section, Record Management Division, Hardy Decl. ¶ 1, that a reasonable search was conducted.  Hardy Decl. ¶¶ 12, 15, 24; Def.'s Mot. at 24.

   *A. FOIA Exemption 2*

   Exemption 2 shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  Among other things, Exemption 2 covers internal information—"that is, the agency must typically keep the records to itself for its own use." *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1265 n.4 (2011) (citation omitted).  Here, the "secure and nonsecure internal telephone numbers and secure internal facsimile numbers of FBI personnel" that defendant seeks to withhold, Def.'s Mot. at 32; Hardy Decl. ¶ 44, fall squarely within this Exemption. *See, e.g.*, *Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 110 (D.D.C. 2008) ("internal secure telephone numbers and message addresses" properly withheld under Exemption 2); *Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d 185, 201 (D.D.C. 2010)

(government telephone numbers and contact information withheld under Exemption 2).[16]

### B. FOIA Exemption 3

Exemption 3 permits an agency to prevent the release of records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). In determining the applicability of Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978); *see Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.,* 830 F.2d 331, 336 (D.C. Cir. 1987).

The FBI seeks to withhold information based on Federal Rule of Criminal Procedure 6(e), which relates to "matter[s] occurring before the grand jury."[17] Fed. R. Crim. P. 6(e)(2)(B). "This phrase—'matters occurring before the grand jury'—includes not only what has occurred and what is occurring, but also what is likely to occur." *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499-500 (D.C. Cir. 1998) (interpreting Federal Rule of Criminal Procedure 6(e)). The Rule does not create "a veil of secrecy . . . over all matters occurring" before the grand jury, *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1001-02 (D.C. Cir. 1999) (citation omitted), but information can be withheld under Rule 6(e) if "disclosure would tend to reveal some secret aspect of the grand jury's investigation[,] such matters as the identities or addresses of witnesses or

---

[16] In *Milner*, the Supreme Court eliminated the distinction between "High 2" and "Low 2" exempted records. 131 S. Ct. at 1265. Information that traditionally fell within the "Low 2" Exemption "is all of 2." *Id.*

[17] Plaintiff admits that it would "not seek disclosure of" materials that defendant "can demonstrate, through an appropriate *Vaughn* submission, . . . would reveal matters that *actually* occurred before a grand jury." Pl.'s Mot. at 23 n.14.

jurors, the substance of testimony, [or] the strategy or direction of the investigation."

*Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008)

(citation and internal quotation marks omitted). Thus, the information that defendant

seeks to withhold pursuant to Rule 6(e)—"information contained in FD-302s that

identif[y] specific records that may be subpoenaed by a Federal Grand Jury, names of

potential grand jury witnesses and interview statements pertaining to proffer agreements

and immunity statements, which could be used as evidence before a Federal Grand Jury,"

Def.'s Mot. at 34; Hardy Decl. ¶¶ 36, 47—is protected from disclosure.

### C. FOIA Exemption 7(D)

Exemption 7(D) protects "the identity of a confidential source," if the information

was furnished on a confidential basis, and "information furnished by a confidential

source," if compiled by a law enforcement authority during the course of a criminal

investigation. 5 U.S.C. § 552(b)(7)(D). If production of the records "could reasonably

be expected to disclose the identity of a confidential source" or "information furnished

by" such a source, then the exemption is properly asserted. *Id.* The exemption's

applicability, therefore, "depends upon whether the particular source who furnished the

information at issue was granted confidentiality, either expressly or by implication."

*Mays v. DEA*, 234 F.3d 1324, 1328 (D.C. Cir. 2000). While "[i]t may be true that many,

or even most, individual sources will expect confidentiality," *U.S. Dep't of Justice v.

Landano*, 508 U.S. 165, 176 (1993), without an express assurance of confidentiality, the

agency must demonstrate that, based on the circumstances, "the source nonetheless

'spoke with an understanding that the communication would remain confidential.'" *Roth*

*v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (quoting *Landano*, 508

U.S. at 172). In making this determination, the Court may consider factors such as

(1) "the character of the crime at issue," (2) "the source's relation to the crime,"

(3) "whether the source received payment, and" (4) "whether the source has an ongoing

relationship with the law enforcement agency and typically communicates with the

agency only at locations and under conditions which assure the contact will not be

noticed." *Id.* (quoting *Landano*, 508 U.S. at 179) (internal quotation marks omitted).

　　The FBI asserts this Exemption to protect the identities of informants who

provided information "under express confidentiality and/or under circumstances from

which an assurance of confidentiality may be implied." Hardy Decl. ¶ 38; *see also* Def.'s

Mot. at 43. Additionally, the FBI seeks to protect the information provided by these

confidential sources because the information provided "by these individuals and

organizations is singular in nature and if released, could reveal the informant's identity."

Hardy Decl. ¶¶ 61-62; Def.'s Mot. at 43. Defendant argues that "[g]iven the nature of the

crimes involved in the investigation," Def.'s Opp'n at 25 n.26—high profile political

corruption charges of conspiracy, fraud, and tax evasion, Hardy Decl. ¶¶ 22-23—"and the

toll that connection to this investigation could have on a source's reputation," Def.'s

Opp'n at 25 n.26—"embarrassment, humiliation or even possible physical harm not only

for themselves, but also for their families," Hardy Decl. ¶ 38—"it is clear that under the

circumstances here it is reasonable to assume that sources provided information with an

understanding that their communications would remain confidential." Def.'s Opp'n at 25

n.26. I agree. Considering these factors, the continuing nature of the investigation,

Hardy Decl. ¶ 23, the ongoing relationship between the FBI and the sources, *id.* ¶ 61, and the potential "chilling effect" of disclosure on current and future sources, *id.* ¶ 62, I find that the information was furnished on a confidential basis and is, therefore, exempt from disclosure.

### D.  FOIA Exemption 7(E)

Finally, Exemption 7(E) protects from disclosure law enforcement records to the extent that their production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see Judicial Watch, Inc. v. U.S. Dep't of Commerce,* 337 F. Supp. 2d 146, 181 (D.D.C. 2004) ("[E]ven commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness.") (citation omitted).  The FBI properly applied this exemption to protect law enforcement techniques and procedures used by FBI Special Agents during the investigation, which, if disclosed could cause circumvention of the FBI's ability to adequately enforce the law.  Hardy Decl. ¶ 64.  Further, "longstanding precedent" of this Court and our Court of Appeals, *Sussman,* 494 F.3d at 1112 (citations omitted), supports "categorical protection for techniques and procedures used in law enforcement investigations or prosecutions." *Judicial Watch, Inc.*, 337 F.Supp.2d at 181 (citations and internal quotation marks omitted).

## CONCLUSION

For all of the foregoing reasons, the defendant's Motion for Summary Judgment is GRANTED and the plaintiff's Cross-Motion for Partial Summary Judgment is DENIED, and this action is DISMISSED in its entirety.  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge