IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) ) Plaintiff, ) ) v. ) ) U.S. DEPARTMENT OF JUSTICE, ) ) Defendant. ) ) | Civ. No. 11-0592 (RJL) |

## PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") cross-moves for partial summary judgment with respect to defendant's withholding of records concerning its investigation of former House Majority Leader Tom DeLay. CREW respectfully refers the Court to the accompanying memorandum of points and authorities in support of this cross-motion.

Respectfully submitted,

  /s/ David L. Sobel
DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC 20015
(202) 246-6180

ADAM J. RAPPAPORT, D.C. Bar No. 479866
Citizens for Responsibility and
   Ethics in Washington
455 Massachusetts Avenue, N.W., Floor 6
Washington, DC 20001
(202) 408-5565

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND<br>ETHICS IN WASHINGTON,<br><br>        Plaintiff,<br><br>        v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>        Defendant. | Civ. No. 11-0592 (RJL) |

**MEMORANDUM IN PARTIAL OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") initiated this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in March 2011, seeking the disclosure of records maintained by defendant Department of Justice ("DOJ") relating to the agency's investigation of former House of Representatives Majority Leader Tom DeLay concerning illegal lobbying activities by Jack Abramoff and others. Following the Court's initial adjudication of the matter, the case is again before the Court upon remand by the D.C. Circuit. DOJ has moved for summary judgment, asserting that its component, the Federal Bureau of Investigation ("FBI"), is entitled to withhold a substantial portion of the agency records responsive to CREW's request. For the reasons set forth below, CREW opposes DOJ's motion in part and cross-moves for partial summary judgment and entry of an order requiring DOJ to disclose certain responsive records.

**Factual Background**

    A.    **DOJ's Public Corruption Investigation**

In 2004, DOJ and the FBI initiated an investigation into the activities of former lobbyist Jack Abramoff and his associates, an investigation the FBI characterized as "a wide-ranging

public corruption investigation as part of its ongoing efforts to root out systemic corruption within the highest levels of the government." Declaration of David M. Hardy ("Hardy Decl.") (Docket No. 9-3), ¶ 22 (footnote omitted). The investigation yielded 21 guilty pleas or convictions following jury trials. Two of those convicted, Tony Rudy and Michael Scanlon, once served as senior aides to Tom DeLay – the former Majority Leader of the United States House of Representatives. During the course of the investigation, the FBI never acknowledged whether Mr. DeLay himself was a subject of the corruption inquiry.[1] In August 2010, however, Mr. DeLay publicly announced that DOJ had informed him it had decided not to bring criminal charges against him related to the Abramoff scandal. *CREW v. U.S. Dep't of Justice*, 746 F.3d 1082, 1087 (D.C. Cir. 2014).

### B. CREW's FOIA Request and the FBI's Response

By letter to the FBI dated October 19, 2010, CREW requested under the FOIA the following agency records:

> [A]ny witness statements, investigation reports, prosecution memoranda, and Federal Bureau of Investigation ("FBI") 302 reports related to [the Department's] investigation of former House Majority Leader Tom DeLay. This includes, but is not limited to, [the Department's] investigation of relationships between Mr. DeLay and Christine DeLay, Dani DeLay, Jack Abramoff, Edwin Buckham, Tony Rudy, Michael Scanlon, Susan Hirshmann, the Alexander Strategy Group, the National Center for Public Policy Research, eLottery, Inc., the U.S. Family Network, Americans for a Republican Majority PAC ("ARMPAC"), Texans for a Republican Majority PAC ("TRMPAC"), and/or the Commonwealth of the Northern Marianas Islands.

Exhibit A (attached to Hardy Decl.).[2]

---

[1] During the investigation, the FBI did, however, issue numerous press releases identifying individuals who had been indicted, convicted and/or pled guilty to the charges against them. *See, e.g.*, Exhibits A-H (filed with CREW's initial cross-motion for summary judgment (Dkt. No. 12)).

[2] CREW also requested the same information from DOJ's Criminal Division, but did not challenge that component's response to its FOIA request.

By letter to CREW dated October 22, 2010, the FBI acknowledged receipt of CREW's FOIA request and indicated that without express authorization and consent of "the third party" – presumably Mr. DeLay – any release of information to plaintiff would violate the Privacy Act. The FBI further asserted that the requested records were exempt from disclosure under the FOIA on privacy grounds. CREW appealed the FBI's determination, but DOJ closed the administrative appeal without decision after CREW initiated this action. Exhibits E-G (attached to Hardy Decl.).

C. **Initial Proceedings in this Court, and the Decision on Appeal**

CREW initiated this action on March 22, 2011, challenging the FBI's determination to withhold all responsive records, and the parties cross-moved for summary judgment. In support of DOJ's summary judgment motion, the FBI acknowledged that it possesses records responsive to CREW's request; to wit, "documents . . . which it was able to identify by virtue of the fact that they were indexed under DeLay's name." Hardy Decl., ¶ 24. These records were described as "FD-302 and FD-302 inserts ('Interview Forms'/'Witness Statements')," *id*., ¶ 35, and "Investigative Materials/Reports," *id*., ¶ 40.[3] The FBI asserted that it had categorically withheld *all* responsive documents pursuant to Exemptions 6 and 7(C) because the records implicated privacy interests of Mr. DeLay and others that were not outweighed by any public interest in disclosure. The Bureau also asserted that *all* of the responsive records were properly withheld under Exemption 7(A) because there were several outstanding convictions and sentencing proceedings related to the Abramoff public corruption investigation that had not yet been completed. Additionally, the FBI asserted that some unspecified responsive information was

---

[3] The FBI also possesses what it describes as a "public source file," which contains records "such as court records and news clippings." *Id*. CREW did not (and does not now) seek access to that material.

also being withheld pursuant to FOIA Exemptions 2, 3, 7(D), and 7(E).  CREW challenged the FBI's categorical invocation of Exemptions 6, 7(C), and 7(A), and also argued that the Bureau had not met its burden of establishing the propriety of the withholdings made under Exemptions 3, 7(D), and 7(E).

In a decision issued on June 8, 2012, the Court granted DOJ's motion for summary judgment – and denied CREW's cross-motion – finding that the responsive records were appropriately categorically withheld under Exemptions 6, 7(C), and 7(A), and that responsive information was also appropriately withheld under FOIA Exemptions 2, 3, 7(D), and 7(E).  *See CREW v. DOJ*, 870 F. Supp. 2d 70 (D.D.C. 2012).[4]

CREW timely appealed to the D.C. Circuit and on April 1, 2014, the court of appeals reversed this Court's decision with respect to the agency's categorical withholding determinations under Exemptions 6, 7(C), and 7(A), and further held that DOJ had presented insufficient evidence in its attempt to justify withholding portions of the responsive records under Exemptions 3, 7(D), and 7(E).  With respect to DOJ's privacy claims, the D.C. Circuit held that any cognizable privacy interests must be balanced against "a weighty public interest in shining a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute a prominent member of the Congress for any involvement he may have had." 746 F.3d at 1092-1093.  The appeals court remanded the case to this Court for further proceedings consistent with its opinion.  *Id*. at 1082.

---

[4]  The Court addressed the applicability of Exemption 2, although CREW did not challenge the agency's reliance upon that exemption.

### D.     DOJ's Post-Remand Withholding of Responsive Information

As a result of the D.C. Circuit's rejection of its attempt to categorically withhold all responsive records under Exemptions 6 and 7(C) and 7(A), the FBI processed 328 pages of material that it claims were responsive to CREW FOIA's request.  In November 2014, the Bureau released to CREW 124 pages (many of which contain substantial redactions), and informed CREW that it was withholding 204 pages in their entirety.  In support of these withholdings, the FBI invoked FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E).  Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def. Mem.") (Dkt. No. 29-1) at 4.

## Argument

### I.     FOIA Establishes a Presumption of Disclosure and Places the Burden on DOJ to Demonstrate that Any Withheld Information is Properly Exempt from Disclosure

The Freedom of Information Act safeguards American citizens' right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  "[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).  *See also Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) ("[a]t all times, courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'") quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

The statute requires disclosure of agency records when requested by the public unless the records fall within one of nine exemptions.  *See* 5 U.S.C. § 552(b)(1) - (9).  If requested

information does not fit squarely into one of these enumerated categories, the law requires federal agencies to disclose the information. *NLRB v. Robbins,* 437 U.S. at 221. FOIA's exemptions "have been consistently given a narrow compass," and requested agency records that "do not fall within one of the exemptions are improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

Disputes involving the propriety of agency withholdings are commonly resolved at the summary judgment stage in FOIA cases. *Harrison v. EOUSA*, 377 F. Supp. 2d 141, 145 (D.D.C. 2005). The Court reviews the government's withholding of agency records *de novo,* and the government bears the burden of proving that a particular document falls within one of the nine narrow exemptions to FOIA's broad mandate of disclosure. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action.'" *Id*. (quoting 5 U.S.C. § 552(a)(4)(B)).

To be entitled to summary judgment, an agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). When claiming one of FOIA's exemptions, the agency bears the burden of providing a "'relatively detailed justification' for assertion of an exemption, and must demonstrate to a reviewing court that records are *clearly* exempt." *Birch v. United States Postal Service,* 803 F.2d 1206, 1209 (D.C. Cir. 1986) (emphasis added) (citing *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

Upon remand from the court of appeals, defendant DOJ and its component, the FBI, seek to withhold a substantial amount of information responsive to CREW's request under

6

Exemptions 3, 5, 6, 7(C), 7(D), and 7(E).  CREW does not challenge the agency's reliance upon Exemptions 3, 7(D), or 7(E), but it does, as set forth below, strongly dispute DOJ's entitlement to withhold *any* information under Exemption 5, and also challenges the propriety of the agency's attempt to withhold certain information on privacy grounds under Exemptions 6 and 7(C).[5]

## II.  DOJ Has Waived its Entitlement to Rely Upon Exemption 5 to Withhold Any Responsive Information from Disclosure

DOJ seeks to withhold six pages of responsive material, designated by the agency as "pages DeLay 123-128," under Exemption 5.  Specifically, DOJ asserts that the material is exempt from disclosure under the deliberative process and attorney-client privileges.  Def. Mem. at 12-16.  Under the facts of this case, however, the agency is foreclosed from asserting Exemption 5 as a basis for withholding responsive information – an argument that it now attempts to put forward for the first time in this four-year-old litigation.

The D.C. Circuit has consistently and unequivocally held that an agency may not invoke new exemption claims subsequent to articulating its initial reasons for withholding requested records in the district court.  As then-Judge Scalia explained in 1986, "[i]t is common ground that the government ordinarily must raise all its claims of exemption in the original proceedings in district court, and may not thereafter assert new claims of exemption, either on appeal or *on remand following appeal.  Wash. Post Co. v. U.S. Dep't of Health & Human Services*, 795 F.2d 205, 208 (D.C. Cir. 1986) (Scalia, J.) (emphasis added; footnote and citation omitted).  *See also Ryan v. Dep't of Justice*, 617 F.2d 781, 791-92 (D.C. Cir. 1980) (holding that "the Government may not raise [a new exemption claim] upon remand to the district court," noting "[t]he danger

---

[5]  CREW does not challenge DOJ's assertion that the FBI conducted an adequate search for responsive records.  *See* Def. Mem. at 6-9.

7

of permitting the Government to raise its FOIA exemption claims one at a time, at different stages of a district court proceeding").

The court of appeals' strongest admonition to the government on this point came in *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764-765 (D.C. Cir. 2000), where it reiterated that "[w]e have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings." The court noted that this longstanding requirement is grounded in two distinct and fundamental interests: "As we have observed in the past, the delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of 'efficient, *prompt*, and full disclosure of information,' and with 'interests of judicial finality and economy.'" *Id*. at 765 (emphasis in original; citations omitted). The result of the court's holding in *Maydak* was straightforward: "[b]ecause the DOJ failed to raise the other exemptions upon which it wished to rely in the original district court proceedings," the D.C. Circuit "order[ed] the release of all requested documents to the appellant." *Id*. at 769.

In this case, DOJ was fully cognizant of *Maydak*'s requirements when it first moved for summary judgment in August 2011. Although it relied upon "categorical" invocations of Exemptions 6, 7(C), and 7(A) to withhold *all* information responsive to CREW's FOIA request, it explicitly cited *Maydak* as the basis for its additional invocations of Exemptions 3, 7(D), and 7(E) to withhold unspecified portions of the material.[6] As the agency explained, its

> assertions of Exemptions 3, 7(D), and 7(E) . . . reflect[] DOJ's position that it would only need to rely on Exemptions 3, 7(D), and 7(E) if the court rejected the applicability of categorical Exemptions 6, 7(C), and 7(A). DOJ asserts

---

[6] In addition to its invocations of Exemptions 3, 7(D), and 7(E), DOJ initially relied upon Exemption 2 to withhold some portions of the responsive records, but CREW did not challenge DOJ's reliance upon that exemption. Plaintiff's Memorandum in Partial Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 11) at 21, n.12.

8

> Exemptions 3, 7(D), and 7(E) here, in light of *Maydak*, 218 F.3d 760, but DOJ *would* rely on these additional exemptions to withhold requested information only if the other exemptions were rejected.

Defendant's Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment and Reply to Plaintiff's Partial Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 14) at 23, citing Hardy Decl. (Dkt. No. 9-3), ¶ 43 (emphasis in original). Indeed, Mr. Hardy, the FBI's declarant, was unequivocal in his explanation that, "[i]n light of the D.C. Circuit's ruling in *Maydak v. U.S. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000), FOIA Exemptions (b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E) are also being asserted [in addition to Exemption 7(A)] . . . ." *Id*. At no time did DOJ or Mr. Hardy suggest that claims were being asserted under Exemption 5.

DOJ's belated attempt to invoke Exemption 5 for the first time, more than three-and-a-half years after it comprehensively articulated its basis for withholding the responsive records, constitutes a blatant violation of the *Maydak* rule. The parties fully briefed their dispositive motions in 2011, this Court ruled on DOJ's exemption claims in 2012, and the D.C. Circuit considered – and rejected – the validity of the agency's legal position in 2014.[7] DOJ is attempting to pursue an approach explicitly disapproved in *Maydak*, where the D.C. Circuit firmly rejected the suggestion that "after . . . the courts conclude that Exemption 7(A) is

---

[7] DOJ, in its current summary judgment motion, mischaracterizes the procedural history of the case when it asserts that, in 2011,

> FBI explained that it had categorically withheld the responsive documents pursuant to Exemptions 6 and 7(C) . . . FBI also explained that it withheld all of the responsive documents under Exemption 7(A) . . . Finally, FBI explained that responsive materials were also being withheld pursuant to FOIA Exemptions 2, 3, 5, 7(D) and 7(E).

Def. Mem. at 5. DOJ further states that this Court found that "responsive information was . . . appropriately withheld under FOIA Exemption[] . . . 5." *Id*. The record is clear that the FBI at no time asserted any claims under Exemption 5, and neither this Court nor the court of appeals considered the validity of any such claims.

9

inapplicable, then the government should be allowed to start back at the beginning in assessing the applicability of and satisfying its burden under other exemptions." 218 F.3d at 766. As a result of DOJ's failure to assert any claims under Exemption 5 when it first articulated its basis for withholding the requested records, any such claims have been waived. *See*, *e.g.*, *Stonehill v. IRS*, 534 F. Supp. 2d 1, 9 (D.D.C. 2008) (characterizing *Maydak*'s rule as one of waiver).

### III. DOJ Has Improperly Withheld Some Responsive Information on Privacy Grounds Under Exemptions 6 and 7(C)

DOJ seeks to withhold responsive information under FOIA's privacy exemptions, Exemptions 6 and 7(C). The agency has identified five distinct categories of information withheld under these exemptions: "names and identifying information of (1) third parties who provided information to the FBI; (2) FBI Special Agents and support personnel; (3) third parties mentioned in investigative records; (4) third parties of investigative interest to the FBI; and (5) non-FBI and federal government personnel." Def. Mem. at 17; *see also* Second Declaration of David M. Hardy ("2d Hardy Decl.") (Dkt. No. 29-3), ¶¶ 33-38. CREW does not challenge the withholding of information concerning "FBI Special Agents and support personnel" or "non-FBI and federal government personnel," but submits that DOJ has failed to establish that *all* of the information it seeks to withhold concerning other third parties is properly exempt from disclosure.

Exemption 6 applies to "personnel or medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) applies to "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion

10

of personal privacy." 5 U.S.C. § 552(b)(7)(C).[8] Although the privacy language in Exemption 7(C) is broader than that in Exemption 6, the courts employ a similar analysis to decide whether information may be withheld on either ground. *See*, *e.g.*, *Judicial Watch v. U.S. Dep't of Homeland Security*, 598 F. Supp. 2d 93, 97 n.1 (D.D.C. 2009) ("The privacy inquiries under Exemptions 6 and 7(C) are 'essentially the same'") (citation omitted). Under both exemptions, the court must first assess whether the third-party has more than a *de minimis* privacy interest in the requested material. *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 12 (D.C. Cir. 2011). If such an interest exists, the court must then determine whether the third-party's privacy interest is outweighed by the public interest in disclosure. *Id*. at 6. If this balancing of interests tips in favor of the public interest, the information may not be withheld.

CREW notes that the D.C. Circuit has long held that "[t]he Exemption 7(C) balancing test must be applied to the specific facts of each case." *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984). "Because the myriad of considerations involved in the Exemption 7(C) balance defy rigid compartmentalization, *per se* rules of nondisclosure based upon the type of document requested, the type of individual involved, or the type of activity inquired into, are generally disfavored." *Id*. (citation omitted). Under the "specific facts" of this case – where the identities of numerous individuals have already been disclosed and the D.C. Circuit has already held that there is a substantial public interest in the withheld material – CREW submits that DOJ has failed to establish its entitlement to broadly rely upon FOIA's privacy exemptions.

---

[8] CREW acknowledges that the disputed information was "compiled for law enforcement purposes" and thus satisfies the Exemption 7(C) threshold.

11

### A. Many Individuals Whose Names Likely Appear in the Withheld Material Have Only a Minimal Privacy Interest at Stake

While it is true that in many cases "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation," *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995), there are no privacy issues at stake when, as in this case, the "secret" is already known.  *See*, *e.g.*, *Reporters Comm.*, 489 U.S. at 765 n.15 ("[T]he interests in privacy fade when the information involved already appears on the public record.") (citation and emphasis omitted); *Hollis v. U.S. Dep't of Army*, 856 F.2d 1541, 1545 (D.C. Cir. 1988) ("when a release consists merely of information to which the general public already has access" privacy interests are not implicated) (footnotes omitted).

DOJ asserts that "[s]uspects [and] witnesses . . . have substantial privacy interests that are implicated by the public release of law enforcement investigative materials," and argues that "[d]isclosure of these materials can lead to great embarrassment and reputational harm for these individuals." Def. Mem. at 19 (citations omitted).  The agency cites *Computer Professionals for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996), in support of the proposition that individuals have a "strong interest . . . in not being associated unwarrantedly with alleged criminal activity." Def. Mem. at 20 (internal quotation marks omitted).  But the D.C. Circuit in that case made clear that the individual privacy interest at issue was "in not being connected *in any way* with a criminal investigation." *Id*. (emphasis added).  It is thus clear that the assumption underlying the authority DOJ relies upon is that the individuals whose names appear in investigative files – and whose privacy interests are protected – are those who have not *already* been associated with, or connected to, the criminal investigation at issue.

CREW notes that numerous individuals have been publicly identified in DOJ press releases as having been charged, convicted or otherwise implicated in its "wide-ranging public corruption investigation." *See, e.g.*, Exhibits A (Todd Boulanger, James Hirni, Trevor Blackann); B (Horace Cooper, Neil Volz); C (Ann Copland); D (Glenn Marshall); E (Kevin Ring); F (David Safavian); G (Italia Federici, J. Steven Griles, Jared Carpenter); H (Congressman Robert W. Ney, Roger G. Stillwell).[9] As the D.C. Circuit has observed,

> by routinely issuing press releases that name the individuals that it has indicted, and then naming them again when they plead guilty or are convicted, the Justice Department has itself made the process [of identifying individuals charged with crimes] infinitely easier. If someone wants to know whether his neighbor or potential employee has been indicted for, convicted of, or pled guilty to a federal offense, he may well find out by simply entering a Google search for that person's name.

*ACLU*, 655 F.3d at 10 (footnotes omitted).

In addition, more than 30 individuals publicly testified in the criminal trials DOJ has identified as arising from its "public corruption investigation." Declaration of David Merchant (filed with Pl. Mem.), ¶¶ 3-5. And the D.C. Circuit noted, in its opinion in this case, that "two of those convicted [as a result of the investigation], Tony Rudy and Michael Scanlon, once served as senior aides to Tom DeLay," 746 F.3d at 1087.[10] The court also noted "Fraser Verrusio's . . . February 10, 2011 conviction on charges stemming from the Abramoff investigation." *Id.* at 1095 n.5. It is thus clear that many individuals have already been publicly associated with DOJ's

---

[9] The cited exhibits were filed with Plaintiff's Memorandum in Partial Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem.") (Dkt. No. 11).

[10] As senior aides to Mr. DeLay, who were convicted as a result of acts associated with their official duties, Mr. Rudy and Mr. Scanlon are particularly likely to be named in FBI records concerning Mr. DeLay. Indeed, the FBI acknowledges that "the investigation attempted to determine if several Tom DeLay associates, after leaving positions on Capitol Hill and becoming lobbyists, conspired with Tom DeLay to commit honest services fraud . . . ." 2d Hardy Decl., ¶ 28.

investigation, as a result of the agency's press releases and open court proceedings. Under such circumstances, the disclosure of those individual's names, to the extent they appear in the withheld material, cannot be expected, as DOJ suggests, to "lead to great embarrassment and reputational harm for these individuals" by "connecting" them to, or "associating" them with, the Abramoff investigation. Those connections and associations have already been made public. As the Supreme Court has recognized, "the interests in privacy fade when the information involved already appears on the public record." *Reporters Comm.*, 489 U.S. at 765 n.15 (citation and emphasis omitted); *see also CREW v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226, 233 (D.D.C. 2012) ("[o]ne can have no privacy interest in information that is already in the public domain").

    **B.**    **As the Court of Appeals Found, There is a Substantial Public Interest in the FBI Records at Issue in This Case**

When conducting the required balancing of interests under Exemptions 6 and 7(C), the Court need not linger long over assessing the weight to be given the public interest in disclosure of the withheld information. As the D.C. Circuit has already found, any cognizable privacy interests must be balanced against "a weighty public interest in shining a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute a prominent member of the Congress for any involvement he may have had." 746 F.3d at 1092-1093. The court emphasized that there is clearly a strong public interest "in examining the FBI's investigation of, and the DOJ's decision not to charge, the former House Majority Leader for his alleged involvement in one of the most significant political corruption scandals in recent memory." *Id*. at 1094. The D.C. Circuit explained specifically the value of the records responsive to CREW's FOIA request:

> Disclosure of the FD-302s and investigative materials could shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government. As the DOJ itself explained,

> the requested records relate to "a wide-ranging public corruption investigation as part of (the FBI's) ongoing efforts to root out systemic corruption within the highest levels of government." Disclosure of the records would likely reveal much about the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches. Indeed, we have repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy . . . .

*Id*. at 1093 (citations omitted).

DOJ has reiterated, on remand, that "[t]he materials sought [by CREW] include summaries of witness interviews, FBI 302s, and investigation reports that contain information about an investigation of Tom DeLay and *his connections to other individuals and entities*." Def. Mem. at 16 (emphasis added). It is thus apparent that the public's assessment of "how the FBI and the DOJ handle[d] the investigation" and "DOJ's exercise of its prosecutorial discretion" necessarily requires an understanding of those "connections" and relationships. DOJ's only argument on this point is the weak assertion, without any elaboration, that "[t]he FBI determined that revealing this information would not enlighten the public about how FBI conducts its internal operations and investigations, and therefore that the disclosure of this information would constitute a clearly unwarranted invasion of these individuals' personal privacy." *Id*. at 21.[11]

---

[11] DOJ also asserts that "unless access to the names and addresses of private individuals appearing in files . . . is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *Id*. (citation and internal quotation marks omitted). But the D.C. Circuit soundly rejected that assertion, which the agency raised earlier in this Court and on appeal. The court of appeals clearly held that although "CREW alleges no impropriety on the part of the FBI or the DOJ[,] it has nonetheless established a sufficient reason for disclosure independent of any impropriety." 746 F.3d at 1095 (footnote omitted). "Whether government impropriety might be exposed in the [investigative] process is beside the point." *Id*. (citation omitted).

It is clear that DOJ, on remand, seeks to cling to its earlier, flawed determination that the public interest would not be served by disclosure of information concerning its investigation of Mr. DeLay. But the court of appeals has foreclosed reliance upon that position: "We do not accept the DOJ's contention that there is *no* public interest in examining the FBI's investigation of, and the DOJ's decision not to charge, the former House Majority Leader for his alleged involvement in one of the most significant political corruption scandals in recent memory." 746 F.3d at 1094 (emphasis in original). The agency has failed to comply with the court of appeals' directive that, on remand, it "must attempt to make a more particularized showing as to what documents or portions thereof are exempt" to enable this Court to "weigh what information may be withheld under Exemption 7(C) and whether any information is reasonably segregable and may be disclosed." *Id*. at 1096.[12] Consistent with the D.C. Circuit's ruling, the Court should find that the minimal privacy interests of any individual whose association with the Abramoff or DeLay investigations has already been confirmed do not trump the "weighty public interest in shining a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute [Mr. DeLay]." 746 F.3d at 1092.

## Conclusion

As set forth above, DOJ has waived its entitlement to rely upon any claims under Exemption 5 to withhold information responsive to CREW's request. The agency also has failed to establish that the privacy interests of individuals already publicly associated with the FBI's corruption investigation outweigh the substantial public interest in "shining a light" on the

---

[12] Among other things, the agency has failed to even attempt to explain why the names of Mr. DeLay and Mr. Abramoff have not been redacted from the records provided to CREW, while the names of all other individuals – despite their public association with the investigation – appear to have been withheld.

actions of the Bureau and DOJ.  For these reasons, the Court should deny in part DOJ's motion for summary judgment and grant CREW's cross-motion for partial summary judgment.

Respectfully submitted,

  */s/ David L. Sobel*
DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC 20015
(202) 246-6180

ADAM J. RAPPAPORT, D.C. Bar No. 479866
Citizens for Responsibility and
   Ethics in Washington
455 Massachusetts Avenue, N.W., Floor 6
Washington, DC 20001
(202) 408-5565

Counsel for Plaintiff

17