**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY** **AND ETHICS IN WASHINGTON,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Case No. 11-592 (RJL)** |
| **v.** | ) ) | |
| **U.S. DEPARTMENT OF JUSTICE,** | ) ) | |
| **Defendant.** | ) ) | |

**FILED**

MAR 3 0 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**
(March 30 2016) [Dkts. ##29, 32]

This action comes before the Court on remand from the Court of Appeals for the District of Columbia Circuit. Plaintiff, Citizens for Responsibility and Ethics in Washington ("plaintiff" or "CREW"), brings this action against the U.S. Department of Justice ("defendant" or "DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, seeking records from the Federal Bureau of Investigation ("FBI"), a component of the DOJ. Before the Court are defendant's Motion for Summary Judgment ("Def.'s Mot.") [Dkt. #29] and plaintiff's Cross-Motion for Partial Summary Judgment ("Pl.'s Mot.") [Dkt. #32]. Upon consideration of the parties' pleadings, the relevant law, and the entire record herein, defendant's Motion for Summary Judgment is GRANTED and plaintiff's Cross-Motion for Partial Summary Judgment is DENIED.

## BACKGROUND

By letters dated October 19, 2010, plaintiff sought from the FBI and the Criminal Division of the DOJ ("CRM"), "any witness statements, investigation reports, prosecution memoranda, and [FBI] 302 reports related to the FBI's and DOJ's investigation of former House Majority Leader Tom DeLay[,] . . . includ[ing] . . . the FBI's and DOJ's investigation of relationships between Mr. Delay" and various other individuals and organizations.[1]  Second Decl. of David M. Hardy ("Hardy Decl. II") ¶ 5 [Dkt. #29-3].  The FBI responded, and without either confirming or denying whether it possessed responsive records, informed plaintiff that it could not release records regarding a third party absent authorization from the third party involved, proof that the third party was deceased, or a clear demonstration that the public interest in disclosure outweighed the third party's personal privacy interest and that a significant public benefit would result from disclosure of the requested records.  Def.'s Second Stmt. of Mat. Facts ("Def.'s Second SOMF") ¶ 2 [Dkt. #29-2]; *see CREW v. Dep't of Justice*, 870 F. Supp. 2d 70, 76 n.4 (D.D.C. 2012).  Plaintiff did not provide either authorization or evidence of death, and the FBI found no "public justification for release."  Def.'s Second SOMF ¶ 2. Accordingly, the FBI categorically withheld the responsive records pursuant to FOIA Exemptions 6 and 7(C), and further invoked Exemptions 2, 3, 7(A), 7(D), and 7(E). Def.'s Second SOMF ¶ 2, 4.  The CRM separately conducted a search for its responsive

---

[1] The individuals and organizations were "Christine DeLay, Dani DeLay, Jack Abramoff, Edwin Buckham, Tony Rudy, Michael Scanlon, Susan Hirshmann, the Alexander Strategy Group, the National Center for Public Policy Research, eLottery, Inc., the U.S. Family Network, Americans for a Republican Majority PAC ('ARMPAC'), Texans for a Republican Majority PAC ('TRMPAC'), and/or the Commonwealth of the Northern Marianas Islands." Hardy Decl. II ¶ 5.

records, but withheld them pursuant to Exemption 7(A) of the FOIA. Def.'s First Stmt. of Mat. Facts ("Def.'s First SOMF") ¶ 15–16 [Dkt. #9-2]. The CRM subsequently determined the requested records should also be withheld pursuant to FOIA Exemptions 3, 5, 6, and 7(C). Def.'s First SOMF ¶ 17–18.

Plaintiff filed the present action on March 22, 2011. *See* Compl. [Dkt. #1]. The parties promptly cross-moved for summary judgment. Defendant's brief discussed the exemptions set forth by both the FBI and the CRM, *see generally* Def.'s First Mem. in Supp. of Its Mot. for Summ. J. ("Def.'s First Mem.") 35–38 [Dkt. #10-1], and attached were affidavits from both FBI and CRM officials. First Decl. of David M. Hardy ("Hardy Decl. I") [Dkt. #9-3]; Decl. of Kristen L. Ellis ("Ellis Decl.") [Dkt. #9-6]. However, plaintiff's brief made clear that it was only challenging the FBI's response, Pl.'s First Mem. in Partial Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot. for Summ. J. (Pl.'s First Mem") 5–6 [Dkt. #12], and thereafter the parties and this Court addressed only those exemptions raised by the FBI. This Court granted defendant's Motion for Summary Judgment, and denied plaintiff's Cross-Motion for Partial Summary Judgment, finding the FBI had conducted a reasonable search and properly withheld documents pursuant to the FOIA exemptions 2, 3, 6, 7(A), 7(C), 7(D), and 7(E). *CREW*, 870 F. Supp. 2d at 78–85. On July 20, 2012, plaintiff appealed this Court's decision. Notice of Appeal [Dkt. #23]. On April 1, 2014, our Circuit Court issued an opinion reversing this Court's ruling and finding that defendant had *not* sufficiently justified its categorical withholding under Exemptions 7(A) or 7(C) and, furthermore, had not provided sufficient detail as to whether the requested records could

properly be withheld under Exemptions 3, 7(D), and 7(E). *CREW v. Dep't of Justice*, 746 F.3d 1082, 1102 (D.C. Cir. 2014). As such, the Circuit Court remanded this case for further proceedings. *Id.*

Thereafter, the FBI ran its search for responsive records anew, using the same parameters and garnering the same results as in its initial search. Def.'s Second SOMF ¶¶ 8–11. After reviewing the results, the FBI determined the search had yielded 328 pages of responsive material. Def.'s Second SOMF ¶ 13; Hardy Decl. II ¶ 15. Invoking FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E), the FBI released 124 pages, many of which contained redactions, to plaintiff and withheld in full the remaining 204 pages. Def.'s Second SOMF ¶ 15; Pl.'s Second Mem. in Partial Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Second Mem") 5 [Dkt. #32]. On April 2, 2015, defendant moved for summary judgment. On May 5, 2015, plaintiff moved for partial summary judgment, seeking review, once again, of defendant's asserted FOIA exemptions. Plaintiff challenges, and thus the Court addresses, only defendant's withholdings pursuant to FOIA Exemptions 5, 6, and 7(C). Pl.'s Second Mem. 7, 10.

## STANDARD OF REVIEW

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment shall be granted when the movant demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When assessing a motion for

summary judgment under FOIA, the Court shall determine the matter *de novo*." *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009) (citing 5 U.S.C. § 552(a)(4)(B)).   Under FOIA, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , [an agency] shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).   Congress has exempted nine categories of documents from the disclosure requirement, but, because there is a "strong presumption in favor of disclosure," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)), the exemptions "are to be 'narrowly construed,'" *id.* (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).   In a FOIA action, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (alterations in original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

"An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions[,]" which it typically does "by affidavit." *Am. Civil Liberties Union v. Dept. of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011).   The Court may award summary judgment based solely on information provided in affidavits or declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). "If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry . . . ." *Id.* at 865.

## ANALYSIS

### I.   FOIA Exemption 5

Defendant seeks to withhold six responsive pages that it calls "pages DeLay 123–128" pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Def.'s Second Mem. in Supp. of Its Mot. for Summ. J. (Def.'s Second Mem.") 11–16 [Dkt. #29-1]. To qualify for this exemption, a document "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*,

532 U.S. 1, 8 (2001). "Courts have incorporated certain civil discovery privileges into Exemption 5, such as attorney-work product, attorney-client privilege, and 'deliberative process' privilege." *Performance Coal Co. v. Dep't of Labor*, 847 F. Supp. 2d 6, 14 (D.D.C. 2012).

Defendant represents that the six pages at issue were part of an electronic communication dated April 2, 2010 that was sent from FBI Special Agents to the CRM for the purpose of communicating the FBI's thoughts about closing a portion of the investigation concerning Tom DeLay and other individuals. Def.'s Second Mem. 13. The pages outline details regarding the allegations and investigation, and they contain the FBI's summary of the DOJ's preliminary decision not to prosecute certain subjects of the investigation. Def.'s Second Mem. 13–14. Defendant argues this material was properly withheld pursuant to Exemption 5 for two reasons. First, defendant argues the material is intra-agency, pre-decisional, and reflects the give-and-take of the Department's decision-making process as to whether to prosecute certain individuals and therefore is protected by the deliberative process privilege. Def.'s Second Mem. 12–14 (citing, *inter alia*, *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Defendant next argues the material is protected by attorney-client privilege because the pages contain both an exchange of confidential information between Department attorneys and their client, the FBI, and a confidential communication reflecting legal analysis and advice as to whether and why the FBI should close the investigation of certain individuals, including Mr. DeLay. Def.'s Second Mem. 15–16 (citing, *inter alia*,

*Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 146 (D.D.C. 2013)).

Plaintiff does not respond to defendant's argument that the material falls within the ambit of Exemption 5, and the Court therefore treats that argument as conceded. *See Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded."). Instead, plaintiff claims "the agency is foreclosed from asserting Exemption 5 as a basis for withholding responsive information" because it evinced this argument "for the first time" in its present Motion for Summary Judgment. Pl.'s Second Mem. 7. Under the law of our Circuit, "the government ordinarily must raise all its claims of exemption in the original proceedings in district court, and may not thereafter assert new claims of exemption, either on appeal or on remand following appeal." *Wash. Post Co. v. Dep't of Health and Human Servs.*, 795 F.2d 205, 208 (D.C. Cir. 1986); *see also Maydak v. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000) ("We have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings.").

As an initial matter, defendant responds that it did assert Exemption 5 in the original proceedings, in its August 2011 motion for summary judgment, which invokes Exemption 5 as to the CRM's prosecution memoranda. Def.'s Opp'n to Pl.'s Cross-Mot. for Partial Summ. J. and Reply to Pl.'s Partial Opp'n to Def.'s Mot. for Summ. J. ("Def.'s Reply") 12–14 [Dkt. #33]. In order to assert an exemption in the original district court

proceedings, an agency must invoke it in a manner sufficient to give "the district court the opportunity to address the applicability of the exemption in the first instance." *Cuban v. SEC.*, 795 F. Supp. 2d 43, 61 (D.D.C. 2011). Unfortunately, defendant did not do so here. The Department employed a decentralized process in which "the decision to release or withhold information [was] left to the component where those records originated." *Fowlkes v. ATF*, 67 F. Supp. 3d 290, 296 n.2 (D.D.C. 2014). The CRM and the FBI each conducted searches of their respective records and separately provided individualized reasons for withholding responsive records in the component's possession. *See generally* Ellis Decl.; Hardy Decl. I. In the initial round of summary judgment, defendant made crystal clear that it asserted Exemption 5 only as a basis for withholding the CRM's records. Def's First Mem. 35 ("**CRM Has Properly Withheld Records Pursuant to FOIA Exemption 5**"). Nowhere did defendant claim the FBI had also properly withheld records pursuant to Exemption 5, nor could it, as the FBI did not attempt to justify non-disclosure of any of its responsive records by asserting Exemption 5. *See* Hardy Decl. I ¶ 43. Moreover, defendant's reliance on Exemption 5 in the initial round extended only to the CRM's prosecution memoranda related to the investigation. Def.'s First Mem. 35–38. At that time, the FBI's affiant clearly stated he had "been advised that the [FBI's] case files do not contain prosecution memoranda, as it is the policy of DOJ not to provide these memoranda to FBI [Special Agents] due to their work-product nature." Hardy Decl. I at 19 n.13. After plaintiff disclaimed any issues as to the CRM's response, the parties' only disputes were to records in the FBI's possession. Because it was not even hinted at in the first round of summary judgment, the issue of

whether Exemption 5 is applicable to the FBI's material was not one plaintiff had the chance to contest or this Court had the opportunity to consider and therefore was not asserted in the original district court proceedings.

The inquiry does not end here, however, because our Circuit has avoided a "rigid 'press it at the threshold, or lose it for all times' approach to . . . agenc[ies'] FOIA exemption claims" as "the harms of disclosure may in some cases outweigh its benefits." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (alterations in orginal) (quoting *Senate of the Commonwealth of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 581 (D.C. Cir. 1987)). Instead, an agency may be permitted to assert FOIA exemptions it did not raise in the initial district court proceedings under certain circumstances, most notably where (1) it was "forced to invoke an exemption for the first time on appeal because of a substantial change in the factual context of the case or because of an interim development in applicable legal doctrine," *id.* (quoting *Jordan v. Dep't of Justice*, 591 F.2d 753, 780 (D.C. Cir. 1978)); (2) "where, through pure mistake, the Government attorneys had not invoked the correct exemption in the district court" as to high value material that very likely "was intended to be protected by one of the nine enumerated exemptions," *id.* (quoting *Jordan*, 591 F.2d at 780); and (3) where strict enforcement of the waiver rule would not advance the policy interests underlying it, *Stonehill v. IRS.*, 558 F.3d 534, 539 (D.C. Cir. 2009); *see also Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 202 (D.D.C. 2007).

Defendant's briefing contains no claim of changed factual or legal circumstances, no *mea culpa* or acknowledgement or mistake, and indeed *no explanation at all* as to its

failure to assert Exemption 5 in regards to the FBI's records in the original proceedings, and, therefore, the first two exceptions are inapplicable here. Instead, the bulk of defendant's argument is that forbidding its invocation of Exemption 5 here would not support the policy considerations supporting the waiver rule. The first such policy consideration is "the interest in judicial finality and economy, which has 'special force in the FOIA context, because the statutory goals—efficient, *prompt*, and full disclosure of information—can be frustrated by agency actions that operate to delay the ultimate resolution of the disclosure request." *August*, 328 F.3d at 699 (quoting *Senate of Puerto Rico*, 823 F.2d at 580). The second is the interest in precluding the government from "play[ing] cat and mouse by withholding its most powerful cannon until after the District Court has decided the case and then springing it on surprised opponents and the judge." *Id.* (quoting *Senate of Puerto Rico*, 823 F.2d at 580).

The propriety of the FBI's withholding of relevant records was litigated before this Court already, and I considered and ruled upon every claim the FBI raised. The case went up to the Court of Appeals, which narrowed the issues. In general, permitting a defendant to raise a new claim of exemption for this first time at this late stage could result in dragging a plaintiff back to the starting line. But that is not the case here. Plaintiff does not dispute that Exemption 5 shields the material at issue from disclosure, and therefore there is no occasion for delaying the process with presentation and consideration of fresh arguments about the applicability of the exemption. *Cf. Maydak*, 218 F.3d at 764 ("[T]he delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of efficient,

*prompt*, and full disclosure of information.").

As to the second, defendant asserts that given its initial invocation of Exemption 5 regarding the CRM's prosecution memoranda and the reasoning it set forth thereto, no one should be surprised by its hot-off-the-press argument. Def.'s Rep. 17. To the contrary, defendant's assertion of Exemption 5 as to the material at issue was most certainly unexpected given the history of the case. However, the Court agrees that defendant's behavior is not consistent with gamesmanship. Defendant never withheld its general argument that the DOJ attorneys' "distillation of facts, legal analyses, opinions, and recommendations about whether to prosecute certain individuals" falls within Exemption 5. Ellis Decl. ¶ 48. That defendant now seeks to withhold similar material for the same reasons does not appear to be the intentional sandbagging warned against in *Maydak* but instead "at most a lack of precision." *Judicial Watch, Inc. v. Dep't of Justice*, 41 F. Supp. 3d 39, 45 n.2 (D.D.C. 2014).

On the whole, the Court is convinced precluding defendant from asserting Exemption 5 as to the material at issue would not advance the policy goals supporting the *Maydak* rule. I will therefore allow it.[2] This conclusion is bolstered by the fact that defendant's arguments regarding the application of Exemption 5 to the material at issue are "sufficiently strong." *Sussman v. U.S. Marshall Serv.*, 494 F.3d 1106, 1119 (D.C. Cir. 2007). Exemption 5 serves to secure the legitimate governmental interest in "enhanc[ing]

---

[2] The Department should understand it prevailed on this issue by the skin of its teeth. This Court is particularly displeased by defendant's misrepresentation in its brief in support of its second Motion for Summary Judgment that the FBI had withheld material pursuant to Exemption 5 in the first round of summary judgment, Def.'s Second Mem. 3, and defendant's failure to explain or take responsibility for the mishap here. The Department would do well to take affirmative steps to prevent this situation from occurring again.

the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (internal citations omitted).   Further, the exemption protects the attorney-client privilege, thereby serving the privilege's purpose of "encourag[ing] full and frank communication between attorneys and their clients and thereby promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).   These interests would be harmed by disclosure here.   Moreover, notwithstanding *Maydak*, "there is no rule that prohibits the district court, *sua sponte*[,] from applying the law in order to achieve a just result." *Cuban*, 795 F. Supp. 2d at 61 (alteration in original) (quoting *Williams v. FBI*, No. 91-1054, 1997 WL 198109, at *2 (D.D.C. Apr. 16, 1997)).   Turning to the merits, I find, as defendant argues and plaintiff concedes, defendant properly withheld pages DeLay 123–128 pursuant to FOIA Exemption 5.

## II.   FOIA Exemptions 6 and 7(C)

Both Exemption 6 and Exemption 7(C) protect an individual's privacy interest when balanced against the public interest in disclosure.   Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   Exemption 7(C) excludes "records or information compiled for law enforcement purposes . . . to the extent that production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).   Thus, in determining the applicability of Exemptions 6 and 7(C), the

Court must balance the interests advanced by FOIA's disclosure requirements against the privacy interests of the individuals mentioned in the records. *Beck v. Dept. of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Because Exemption 7(C) "establishes a lower bar [than Exemption 6] for withholding material," *ACLU v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011), the Court focuses its analysis on whether the records were properly withheld under Exemption 7(C). *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 898 F. Supp. 2d 93, 102–03 (D.D.C. 2012). Plaintiff concedes that the "disputed information was 'compiled for law enforcement purposes' and thus satisfies the Exemption 7(C) threshold." Pl.'s Second Mem. 11 n.8; *see also* 5 U.S.C. § 552(b)(7). Therefore, the task at hand is to "to balance the [ ] privacy interest against the public interest in disclosure." *CREW*, 746 F.3d at 1091 (alteration in original) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004)).

Citing exemptions 6 and 7(C), the FBI withheld the names and identifying information of (1) third parties who provided information to the FBI, (2) FBI Special Agents and support personnel, (3) third parties mentioned in investigative records, (4) third parties of investigative interest to the FBI, and (5) non-FBI and federal government personnel. Def.'s Second Mem. 17. The FBI did not, however, redact Messrs. DeLay and Abramoff's names from the responsive records. Pl.'s Second Mem. 16 n.12. Plaintiff does not challenge the withholding of information related to FBI Special Agents and support personnel or to non-FBI and federal government personnel, but maintains that defendant has failed to establish that all the withheld information

related to third parties is exempted from disclosure. Pl.'s Second Mem. 10.

The various third parties all have substantial privacy interests at stake. "[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984). This interest extends to those who are subjects of criminal investigations, *see Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 864 (D.C. Cir. 1981) ("There can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of an FBI investigation."), and is particularly strong where individuals have "been investigated but never publicly charged at all." *ACLU*, 655 F.3d at 7. The substantial privacy interest in information contained in law-enforcement records also extends to other "third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995); *see also Schrecker v. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("[O]ur decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants.").

Plaintiff argues that those third parties who have been publicly identified as having been charged, convicted, or otherwise implicated in the Department's broad public corruption investigation or those who publicly testified in criminal trials arising from that investigation have at most a minimal privacy interest in having their names withheld. Pl.'s Second Mem. 12–13. Plaintiff claims those individuals would not suffer

embarrassment or reputational harm from being publicly connected to the investigation, because their connection to it has already been made known.  Pl.'s Second Mem. 14. Plaintiff maintains to the extent those individuals' names appear in the responsive documents, they must be released.  Pl.'s Mem. 13–14.

Plaintiffs cite, *inter alia*, *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 n.15 (1989), for the proposition that the "interests in privacy fade when the information involved already appears on the public record."  But individuals do not lose their privacy interest in avoiding unwarranted association with a criminal investigation merely because some information becomes publicly known.  *See, e.g.*, *Elliott v. FBI.*, No. 06-1244, 2007 WL 1302595, at *6 (D.D.C. May 2, 2007) ("The fact that these individuals' identities were disclosed at a public trial does not diminish their privacy interests."); *Judicial Watch, Inc. v. FBI.*, No. 00-745, 2001 WL 35612541, at *6 (D.D.C. Apr. 20, 2001) ("The fact that the requester might be able to figure out the individuals' identities through other means or that their identities have been disclosed elsewhere does not diminish their privacy interests for purposes of" Exemption 7(C)). Instead, to establish a that privacy interest has been waived, the plaintiff bears "the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."[3]  *Davis v. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992); *see also Showing Animals Respect & Kindness v. Dep't of Interior*, 730 F. Supp. 2d 180,

---

[3] Our Circuit Court has also held that an individual's voluntary public disclosure of his connection to an investigation "effectively waive[s his] right to redaction of his name from documents on events that he has publicly discussed." *Nation Magazine*, 71 F.3d at 896.  Plaintiffs do not argue any such voluntary divulgence took place here.

197–98 (D.D.C. 2010) ("[A]n agency need not disclose an exempt record unless there is an identical record in the public domain, and it is the requester's burden to show that the information is freely available."). Plaintiff has not met its burden of precision here. Plaintiff alleges only that certain individuals have been publicly associated with the Department's large-scale public corruption investigation. Plaintiff does not point to any information in the public domain confirming the individuals whose names are redacted have been publicly associated specifically with the investigation into Mr. DeLay or into the precise conduct or events discussed on the pages with redacted names and identifying information. Thus, the third parties continue to have a substantial privacy interest, and their names "are presumptively exempt from disclosure." *Schrecker*, 349 F.3d at 666; *see also id.* (quoting *Safecard*, 926 F.2d at 1206, for the proposition "that information in law enforcement records identifying private individuals is exempt from disclosure unless release is necessary to 'confirm or refute compelling evidence that the agency is engaged in illegal activity'").

Having found substantial privacy interests at stake, the Court turns to assess the public interest in disclosure. *See CREW*, 746 F.3d at 1091. As our Circuit Court found, there is "a weighty public interest in shining a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute a prominent member of the Congress for any involvement he may have had." *Id.* at 1092–93. "That is, the relevant public interest is *not* to find out what DeLay himself was 'up to' but rather how the FBI and the DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct." *Id.* at 1093; *see also id.* (describing the public interest in the

level of "diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion[ and] whether the government had the evidence but nevertheless pulled its punches").

Plaintiff contends this public interest would be served by releasing the redacted names and identifying information and thereby shedding additional light on the Department's investigation as it related to Mr. DeLay's connections to other individuals and entities. Pl.'s Second Mem. 15. I disagree. While releasing the withheld names would provide more information about *Mr. DeLay's* conduct and associations, it is unclear from plaintiff's argument how doing so would serve the public interest in shedding light on how the *Department* conducted the investigation, the level of diligence and resources it put forth, and the amount of evidence it surmounted. Indeed, our Circuit Court has repeatedly rejected similar arguments, finding only a weak public interest in the disclosure of names and other identifying information contained in law enforcement records as such information is "simply not very probative of an agency's behavior or performance." *Safecard*, 926 F.2d at 1205; *see also Schrecker*, 349 F.3d at 666 (D.C. Cir. 2003).

Assuming *arguendo* there is an "incremental public interest" at stake, *Safecard*, 926 F.2d at 1206, it is weak and does not outweigh the third parties' substantial interest in nondisclosure. Thus, defendant was justified in withholding the names and identifying information of the relevant third parties.

## CONCLUSION

For all of the foregoing reasons, the defendant's Motion for Summary Judgment is GRANTED and the plaintiff's Cross-Motion for Partial Summary Judgment is DENIED. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge